Clyde DeWitt
Nevada State Bar No. 9791
Law Offices of Clyde DeWitt,
        A Nevada Professional Corporation
800 US Bank Building
2300 West Sahara Avenue
Las Vegas, NV 89102-4397
(702) 386-1756; fax (702) 441-0308
*clydedewitt@earthlink.net*

Spencer D. Freeman
Washington State Bar No. 25069
        *(Subject to admission pro hac vice)*
Freeman Law Firm, Inc.
1107½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500; fax: (253) 383-4501
*sfreeman@freemanlawfirm.org*

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

**AT LAS VEGAS, NEVADA**

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation, d/b/a METART, d/b/a SEXART, d/b/a The MetArt Network, <br><br> Plaintiff, <br><br> v. <br><br> WGCZ, S.R.O., a foreign corporation, individually and d/b/a XVIDEOS.COM, XVIDEOSDAILY.COM and XVIDEOSTODAY.NET; STEPHANE MICHAEL PACAUD, an individual; MALORIE DEBORAH PACAUD, an individual; and Does 1-10, <br><br> Defendants. | Case Number _____ <br><br> **ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR:** <br><br> **1.  Copyright Infringement;** <br><br> **2.  Contributory Copyright Infringement;** <br><br> **3.  Vicarious Copyright Infringement;** <br><br> **4.  Inducement of Copyright Infringement;** <br><br> **5.  Trademark Infringement;** <br><br> **6.  Contributory Trademark Infringement; and** <br><br> **7.  Violating Lanham Act § 43(a).** |

COMES NOW Plaintiff HYDENTRA HLP INT. LIMITED and, based upon knowledge of its own acts and based upon information and belief as to the acts of others, complains:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over all claims for relief pursuant to 38 U.S.C. § 1331 because each is grounded upon a federal statute and, accordingly raises a federal question.

2.     Further, this court has subject matter jurisdiction over the copyright and trademark claims pursuant to 28 U.S.C. § 1338(a).

3.     Further, this court has subject matter jurisdiction over the unfair competition claims pursuant to 28 U.S.C. § 1338(b).

4.     This court has personal jurisdiction over Defendant WGCZ, S.R.O. pursuant to 28 U.S.C. § 1391(b) and/or (c) because its principal place of business is in Clark County, Nevada, *e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ US ___, 131 S.Ct. 2846, 2853-54, 180 L.Ed.2d 796 (2011).

5.     Alternatively, this court has personal jurisdiction over the defendant based upon Nevada Revised statutes section 14.065 because exercise of jurisdiction would  not be inconsistent with the Nevada Constitution or the Constitution of the United States.

6.     Alternatively, to the extent that the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, then this Court has personal jurisdiction over the defendant pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure because  the court's exercise of jurisdiction is consistent with the United States Constitution and laws.

---

**Page 1**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

7.    Moreover, this court has personal jurisdiction over the Defendant WGCZ, S.R.O. because it engaged in business activities in and directed to this district, and have committed tortious acts within this district or directed at this district.

8.    Venue is proper in this district pursuant to pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d) because Defendant is a resident of this district and § 1391(c) because Defendant is subject to personal jurisdiction in this district and, to the extent that it might not be resident of the United States, pursuant to 28 U.S.C. § 1291(c)(3) because it is subject to suit in any jurisdiction.

9.    This case is properly filed in the "unofficial" Southern Division of this District pursuant to Local Rule IA 6-1 of this court because Defendant resides in Clark County, Nevada.

## **PARTIES**

10.    Plaintiff HYDENTRA HLP INT. LIMITED ("Plaintiff") is a corporation, organized and existing under the laws of Cypress, with its principal offices in Los Angeles County, California.

11.    Defendant WGCZ, S.R.O. ("WGCZ" or "Defendant") is a corporation, organized and existing under the laws of the Czech Republic with its principal office in Clark County, Nevada and perhaps elsewhere.

12.    Defendant Stephane Michael Pacaud is, upon information and belief, a resident of France, and an executive of WGCZ, S.R.O. acting within the United States and seeking protection of the laws of the United States.

13.    Defendant Malorie Deborah Pacaud is, upon information and belief, a resident of France, and an executive of WGCZ, S.R.O. acting within the United States and seeking protection of the laws of the United States.

---

**Page 2**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

C:\K-Drive\Files\Freeman, Spencer\FILED-SERVED DOCUMENTS\2015-002 - Original Complaint.wpd

14.     Defendants Stephane Michael Pacaud and Malorie Deborah Pacaud are each executive of Defendant WGCZ, S.R.O., with discretion, influence, and control over the contents of Xvideos.com, Xvideosdaily.com, and Xvideostoday.net.

15.     Defendants Doe 1-10 are individuals or entities that own *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* and/or act in concert with *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net*.  The true names and capacities of which are presently unknown to Plaintiff.  It is for that reason Plaintiff sues these Defendants by fictitious names. Plaintiff avers that each of the Doe defendants, along with the named defendant, jointly or severally, is responsible for the damages alleged herein.

**Domestic Activities of Plaintiff WGCZ, S.R.O.**

16.     In September 2012, WGCZ, S.R.O. applied with the United States Trademark Office for trademark protection under the laws of the United States for the mark "xvideos."  In March 2013, the United States Trademark Office granted such protections.

17.     Since being granted protections by the United States Trademark Office, WGCZ, S.R.O. has asserted such protections at least three times in the United States, including filing complaints with the World Intellectual Property Organization seeking recovery of domains which were alleged to have violated WGZC, S.R.O.'s trademark registration.  In each of these complaints, WGZC, S.R.O. represented under oath that it was a resident of Las Vegas, Nevada.

18.     WGCZ, S.R.O. owns *Xvideos.com*, *Xvideosdaily.com*, and *Xvideostoday.net*, each of which is an Internet Web site that displays and distributes adult-oriented videos, content, and services.

19.     A June 2014 WIPO Arbitration Panel Decision stats that WGCZ S.R.O. is, "of Las Vegas, Nevada, United States of America," and ". . . [WGCZ S.R.O.] submits that it owns registered trade mark rights for its XVIDEOS mark and that its use of the mark in connection with the provision of on-line adult entertainment services at the domain name *<Xvideos.com>* has become so well known since 2007 that it receives approximately 4.4 billion page views per month, three times the number of views received by numerous other world-famous Internet sites, including "CNN.com" and *"ESPN.com*." [1]

## FACTS COMMON TO ALL CLAIMS

### The DMCA

20.     Included in the Digital Millennium Copyright Act, Pub. L. 105-304, 112 Stat. 2860 (October 28, 1998) (the "DMCA") is Title II, the Online Copyright Infringement Liability Limitation Act, amending the Copyright Act of 1976 to create a new section 512.  17 U.S.C. § 512(c), limiting liability of online service providers.

21.     DMCA section 512(c) provides true internet service providers with protection against liability for copyright infringement resulting from the actions and/or postings of their users.  As a primary example, the safe harbor protections provide *YouTube.com* with protection from liability should one of its users post a copyright protected video without authority or license.

---

[1]     Source: WGCZ S.R.O. v. WhoIsProtectService.net Protect service, Ltd./AVO Ltd, Case No. D2014-0549. Last visited March 6, 2015.

Link:

*http://www.wipo.int/amc/en/domains/search/text.jsp?case=D2014-0549*

**Page 4**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

22.    To enjoy safe harbor protection under § 512(c), an online service provider must (1) not receive a financial benefit directly attributable to the infringing activity, (2) not be aware of the presence of infringing material or know any facts or circumstances that would make infringing material apparent, and (3) upon receiving notice from copyright owners or their agents, act expeditiously to remove the purported infringing material.  The latter notice generally is called a "take-down notice" in the industry to which § 512(c) applies.

23.    One of the requirements for protection under § 512(c) is appointment of a "designated agent" who is registered at the Copyright Office of the Library of Congress to receive take-down notices.

24.    Failure to appropriately respond to a properly served take-down notice that complies with the statutory requirements results in an "expeditious" manner results in loss of immunity, as does failure to have in place and enforce a repeat-infringer policy..

**Plaintiff's Copyrights**

25.    Plaintiff is the sole owner of each of the copyrights listed in Exhibit 1001, attached hereto.  Each such copyright was procured either within three months of first publication or prior to the commencement of infringing activities alleged herein with respect to that copyright or both.

26.    There are no encumbrance on any of the aforesaid copyrights.

27.    Plaintiff has taken industry standard steps to identify its products, including placing recorded warnings at the beginning and end of video productions that appear whenever those videos are played.  Plaintiff's videos are watermarked with Plaintiff's readily identifiable logo.

---

**Page 5**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

28.     Plaintiff, more commonly known as the MetArt Network of adult entertainment properties, is a group of erotic Web sites that explore and deliver sensuality and sexuality through artistic photography, video, erotic stories, and through articles about beauty, culture, and nudity.   These Web sites include *MetArt.com*, *SexArt.com*, *Errotica-Archives.com*, *EroticBeauty.com*, *TheLifeErotic.com*, *RylskyArt.com*, *MichealNinn.com*, *ALSScan.com*, *VivThomas.com*, *EternalDesire.com*, *Stunning18.com*, *HollyRandall.com*, *domai.com*, *goddessnudes.com*, *MagikSex.com*, and *bbfilms.com*. Since 1999, Plaintiff has grown its trademark brands into a globally recognized leader of sensual art garnering numerous industry awards through the use of studios around the globe, exotic locations, high budget productions, engaging storylines, famed photographers and directors coupled with the dedication from its artists and technicians.

29.     The MetArt library is comprised of exclusive content that features over 5000 models shot by 250 photographers/directors including such notables as Vivian Thomas and the late Zalman King, who also brought Hollywood films such as Wild Orchid, Two Moon Junction, 9 ½ Weeks, and the Showtime network groundbreaking series Red Shoes Diaries.

30.     The MetArt Web sites are paid membership sites.  MetArt engages in extremely limited licensing of its content to other entities or Web sites for viewing, in addition to the small sample of promotional materials provided to MetArt affiliates for the sole purpose of the affiliates' promoting MetArt property.  Any licensing is done with the intent for brand exposure and is limited to a small subset of hand-selected content.  Predominantly, the MetArt business model is simply that a user must be a paid member to a MetArt site to view MetArt's works.

---

**Page 6**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

31.     Plaintiff is the respective producer, distributor, and exclusive licensor of its own motion pictures in the United States as well as throughout the world.

**Plaintiff's Trademarks**

32.     Plaintiff's MetArt trademark and service mark have been continuously used in commerce since May 2002.  United States Trademark Registration No. 3152759 was registered on October 10, 2006.

33.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark MetArt.  As a result, the purchasing public has come to know, rely upon and recognize the mark MetArt as an international brand of high quality adult entertainment.

34.     Plaintiff's SexArt trademark and service mark have been continuously used in commerce since April 2011.  Its United States Trademark Registration No. 4191754 was registered on August 14, 2012.

35.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark SexArt.  As a result, the purchasing public has come to know, rely upon and recognize the mark SexArt as an international brand of high quality adult entertainment.

**Activities of Defendant WGCZ, S.R.O.**

36.     Defendants conduct business as *Xvideos.com*, *Xvideosdaily.com*, and *Xvideostoday.net*, operate the Web sites, and derive direct financial benefit through advertising sales on the Web sites.

37.     Defendants compete against Plaintiff in the distribution and sale of adults-only audio-visual works through Internet distribution and divert potential

---

**Page 7**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

customers from Plaintiff.

38.    Defendant WGCZ, S.R.O. registered *Xvideos.com* as an Internet Service Provider and designated a DMCA Agent.   However, Defendants fail to honor take-down notices as required and fails to implement a reasonable repeat infringer policy.  Thus, *Xvideos.com* does not qualify for DMCA safe harbor protections.

39.    Defendants have not listed a designated DMCA agent, has not designated a DMCA agent, and has not registered as a service provider for *Xvideosdaily.com*.

40.    Defendants have not listed a designated DMCA agent, has not designated a DMCA agent, and has not registered as a service provider for *Xvideostoday.net*.

41.    The DMCA safe harbor provisions have been systematically abused by internet copyright infringers in an attempt to garner protection for pirate Web sites displaying copyrighted adult entertainment content without license or authority for free viewing to the public.  Under a veneer of DMCA compliance, the owners and operators attempt to hide behind the safe harbor provisions while monetizing the Web site through membership programs and substantial advertising contracts.

42.    *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* are such pirate Web sites, displaying copyrighted adult entertainment content without authorization or license.

43.    Defendants host adult entertainment videos and/or host embedded code for adult entertainment videos to permit a user to view the videos on *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* for free.

44.    Defendants sell advertising space on *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* in several forms, including front load pop-up advertising and advertising banners on space in close proximity to free videos, often geocentric.

45.    Videos on *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* may

---

**Page 8**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

be shared on other sites, in addition to the user being provided with direct links for posting on or to any social media site including, but not limited to, Facebook, Twitter, Google or via to Email to anyone regardless of age or location.  Such functionality makes it impossible to know how many times and where an unlicensed copyrighted video has been posted and displayed illegally as a direct result of Defendants unlawful display.

46.     Defendants place their registered US trademark, XVIDEOS, on the copyrighted works owned by Plaintiff.  This mark advertises the Defendants web property to all who view the video on Defendants site or on any shared location, where and when the video is displayed.  *Xvideos.com* is an active link.  Therefore, when a user takes a video and displays it and/or links it to another site, a subsequent user will be taken back to xvideos.com.

47.     *Xvideos.com* fails to fulfill the requisite conditions precedent to qualify for the safe harbor provisions of the DMCA.  Specifically, while a registered Internet Service Provider and appointing a registered DMCA Agent, the Defendants fail to honor the take-down notices sent to the DMCA Agent and fails to implement a reasonable repeat infringer policy.

48.     *Xvideosdaily.com* and *Xvideostoday.net* each fail to fulfill the requisite conditions precedent to qualify for the safe harbor provisions of the DMCA.  Specifically, Defendant have not registered the sites as Internet Service Providers with the United States Copyright Office, fails to have a DMCA Agent identified on the site, and fails to have a DMCA Agent registered with the United States Copyright Office.

49.     In or about January 2015, and for an unknown time before and up to the present, Defendants' Web site *Xvideos.com* displayed 44 of Plaintiff's copyright registered works over 65 separate and distinct URLs  – each a part of *Xvideos.com*.

---

**Page 9**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

C:\K-Drive\Files\Freeman, Spencer\FILED-SERVED DOCUMENTS\2015-002 - Original Complaint.wpd

Those copyrighted works and their corresponding *Xvideos.com* page are listed in Exhibit 1001, attached hereto. Defendants have no authority or license to display or distribute any portion of Plaintiff's copyrighted works.

50.     On January 23, 2015, DMCA compliant take-down notices were delivered to the DMCA Agent appointed for *Xvideos.com*.  On February 17, 2015, the DMCA Agent was notified that 40 of Plaintiff's registered copyrights were still being violated.  As of the date of this filing, those violations continue.

51.     In or about February 2015, and for an unknown time before and up to the present, Defendants' Web site *Xvideosdaily.com* displayed one of Plaintiff's copyright registered.  The copyrighted work and the corresponding *Xvideosdaily.com* page is listed in page 3 of Exhibit 1001, attached hereto. Defendants have no authority or license to display or distribute any portion of Plaintiff's copyrighted works.

52.     In or about February 2015, and for an unknown time before and up to the present, Defendants' Web site *Xvideostoday.net* displayed one of Plaintiff's copyright registered works.  The copyrighted work and the corresponding *Xvideostoday.net* page is listed in Exhibit B, attached hereto.  Defendants have no authority or license to display or distribute any portion of Plaintiff's copyrighted works.

53.     The     intellectual     property     infringement     on     *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* is not limited to the unlawful display of Plaintiff's copyrighted works.  In each instance of copyright infringement, Defendants have also infringed Plaintiff's registered trademarks.

54.     For Plaintiff's videos that are displayed without authority on *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* the Defendants have caused Plaintiff's trademarks to be used in the meta tags and/or meta descriptions for the URL of the infringing video.

---

**Page 10**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

55.     A meta tag is an HTML (hypertext markup language) code embedded on a Web page that is used by the Web site owner to identify the site content.  Meta tags are powerful tools because they have a direct effect on the frequency with which many search engines will find a Web site.

56.     Meta tags and/or meta descriptions are used by Internet search engines as an indexing tool to determine which web sites correspond to search terms provided by a user.

57.     Meta tags do not affect the appearance of a Web site and are not visible when you look at a Web page, but they provide information regarding the content of the site.

58.     Some Web sites use meta tags in a deceptive manner to lure Web surfers. Instead of using terms that properly describe the site, some programmers substitute the names of competing companies. For example, a rival shoe manufacturer may bury the meta tag "Nike" in its Web page to lure Web surfers searching for Nike products. In the case of the Web site selling handmade watches, the meta tag might include "Rolex," "Swatch," "Bulova," or Cartier."

59.     By using Plaintiff's trademarks in Defendants' meta tags and/or meta descriptions, Defendants use Plaintiff's trademarks in commerce and in connection with their promotions, sales, and advertising.

60.     The use of Plaintiff's trademarks in Defendants' meta tags and/or meta descriptions is likely to cause confusion to the end users/consumers, especially initial interest confusion.

61.     As an example, a recent search on *google.com* for "Free SexArt" and "MetArt Films" listed *xvideos.com* in the #1 position in each instance; for "SexArt Movies" it listed *xvideos.com* in the #5 position; and "MetArt" places *xvideos.com* in

---

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

the #3 position. A recent search on *google.com* for "SexArt Movies" on *xvideos.com* showed 1290 results; and for "Free SexArt Movies" showed 2120 results. The same search done for "MetArt Movies" on *xvideos.com* returns 525 results; and "Free MetArt movies" returned 669 results. A simple search for "SexArt" on *xvideos.com* showed 3,140 results; and for "MetArt" 1,980 results.

62.     The take-down notices delivered to the *Xvideos.com* DMCA Agent on January 23, 2015 included notice of the trademark infringements and demanded that such action cease.

63.     The demand to cease the use of Plaintiff's trademarks was ignored in totality. In fact, for the limited videos that were disabled on *Xvideos.com* pursuant to the take-down notices, the meta data for these videos remained and remains active.

64.     Upon information and belief, Defendants have actual knowledge and clear notice of the infringement of Plaintiff's titles or else is willfully blind to the rampant infringement. The infringement is clear and obvious even to the most naïve observer. Plaintiff's films are indexed, displayed and distributed on Defendants' Web site through Defendant and the Doe Defendants acting in concert. Plaintiff's and other major producers' trademarks are used to index infringing material along with obfuscation of watermarks and other identifiers which is evidence of knowledge and intent.

65.     By virtue of the conduct alleged herein, Defendants knowingly promote, participate in, facilitate, assist, enable, materially contribute to, encourage, and induce copyright infringement, and thereby have infringed, secondarily infringed, and induced infringement by others, the copyrights in Plaintiff's copyrighted work.

66.     Defendants, either jointly, severally, actually, constructively, and with or without direct concert with one another, deprived Plaintiff of the lawful monetary

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

C:\K-Drive\Files\Freeman, Spencer\FILED-SERVED DOCUMENTS\2015-002 - Original Complaint.wpd

rewards that accompany its rights in the copyrighted works.  Defendants disregard for copyright trademark laws threaten Plaintiff's business.

67.     Defendants intentionally, knowingly, negligently, or through willful blindness avoided reasonable precautions to deter rampant copyright infringement on their Web site.

68.     Defendants make no attempt to identify any individual providing the works, where the individual obtained the works, whether the individuals had authority to further reproduce and distribute the works or if such parties even exist.

69.     Defendants' acts and omissions allow them to profit from their infringement while imposing the burden of monitoring Defendants' Web site onto copyright holders, without sufficient means to prevent continued and unabated infringement.

## FIRST CLAIM FOR RELIEF

## FOR COPYRIGHT INFRINGEMENT

### [17 U.S.C. §§ 101 et. seq.]

### Against All Defendants

70.     Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

71.     Plaintiff holds the copyright on each of the infringed works alleged herein.

72.     Plaintiff registered each copyright with the United States Copyright Office.

73.     At all pertinent times, Plaintiff is the producer and registered owner of the audiovisual works illegally and improperly reproduced and distributed by

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

Defendants.

74.    Defendants copied, reproduced, reformatted, and distributed Plaintiff's copyrighted works by and through servers and/or hardware owned, operated and/or controlled by Defendants.

75.    Defendants did not have authority or license to copy and/or display Plaintiff's original works.

76.    Defendants infringed Plaintiff's copyrighted works by reproducing and distributing works through Defendants' Web site without property approval, authorization, or license of Plaintiff.

77.    Defendants knew or reasonably should have known they did not have permission to exploit Plaintiff's works on *Xvideos.com*, *Xvideosdaily.com*, and/or *Xvideostoday.net* and further knew or should have known their acts constituted copyright infringement.

78.    Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measure to determine the owner or license holder of the copyrighted works.

79.    Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiff's copyrighted works.

80.    The quantity and quality of copyright files available to Internet users increased the attractiveness of Defendants' service to its customers, increased its membership base, and increased its ad sales revenue.

81.    Based on information and belief, Defendants actively uploaded pirated copyrighted files and/or embedded code, enabling users of *Xvideos.com* to view

---

**Page 14**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

1    copyrighted videos and images for free.

2        82.    Defendants controlled the files owned by Plaintiff and determined which

3    files remained for display and distribution.

4        83.    Defendants never adopted procedures to ensure that distribution of

5    Plaintiff's copyrighted materials would not occur. Further, Defendants never

6    implemented or enforced a "repeat infringer" policy.

7        84.    Defendants either were aware, actually or constructively, should have

8    been aware, or were willfully blind that pirated copyrighted materials comprised the

9    most popular videos on the Defendants Web sites.

10       85.    Defendants, through _Xvideos.com_, _Xvideosdaily.com_, and/or

11   _Xvideostoday.net_ affirmatively and willfully accommodated Internet traffic generated

12   by the illegal acts.

13       86.    Defendants' conduct was willful within the meaning of 17 U.S.C. § 101,

14   et seq. At a minimum, Defendants acted with willful blindness and reckless disregard

15   of Plaintiff's registered copyrights.

16       87.    Because of their wrongful conduct, Defendants are liable to Plaintiff for

17   copyright infringement. See 17 U.S.C. §501. Plaintiff suffers and will continue to

18   suffer substantial losses, including, but not limited to, damage to its business

19   reputation and goodwill.

20       88.    The law permits Plaintiff to recover damages, including readily

21   ascertainable direct losses and all profits Defendants made by their wrongful conduct.

22   17 U.S.C. §504. Alternatively, the law permits Plaintiff to recover statutory damages.

23   17 U.S.C. §504(c).

24       89.    Because of Defendants' willful infringement, the law permits

25   enhancement of the allowable statutory damages. 17 U.S.C. §504(c) (2).

26

27                            **Page 15**

28        **ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

90.     The law permits Plaintiff injunctive relief. 17 U.S.C. §502. Further, the law permits a Court Order impounding any and all infringing materials. 17 U.S.C. §503.

## SECOND CLAIM FOR RELIEF
## FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT
### Against All Defendants

91.     Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

92.     Unknown individuals, without authorization, reproduced and distributed Plaintiff's works through Defendants' Web sites, directly infringing Plaintiff's copyrighted works.

93.     Defendants contributed to the infringing acts of those individuals.

94.     Defendants were aware, should have been aware, or were willfully blind to the infringing activity.

95.     Defendants aided, abetted, allowed, and encouraged those individuals to reproduce and distribute Plaintiff's copyrighted works through Defendants' Web site without regard to copyright ownership.

96.     Defendants had the ability and obligation to control and stop the infringements.  Defendants failed to do so.

97.     Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

98.     Defendants received direct financial benefits from the infringements.

---

**Page 16**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

99.   Defendants' actions constitute contributory infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

100.   The unauthorized reproduction, distribution, and public display of Plaintiff's copyrighted works that Defendant enables, causes, materially contributes to and encourages through the acts described above are without Plaintiff's consent and are not otherwise permissible under the Copyright Act.

101.   The acts of infringement by Defendants have been willful, intentional, and purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

102.   As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

103.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

104.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## THIRD CLAIM FOR RELIEF
## FOR VICARIOUS COPYRIGHT INFRINGEMENT
### Against All Defendants

105.   Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

106.   Without authorization, individuals reproduced, distributed, and publicly

---

**Page 17**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

displayed Plaintiff's works through Defendants' Web site, directly infringing Plaintiff's copyrighted works.

107.   Defendants were actually or constructively aware or should have been aware or were willfully blind to the infringing activity.

108.   Defendants were able to control or completely end the illegal and improper infringement, but failed to do so.

109.   Defendants contributed materially to the infringement.

110.   Defendants received directly financial gain and profit from those infringing activities.

111.   The acts, omissions, and conduct of all Defendants constitute vicarious copyright infringement.

112.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights. As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

113.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c ).

114.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

/

/

/

---

**Page 18**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

**FOURTH CLAIM FOR RELIEF**

**FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT**

**Against All Defendants**

115.   Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

116.   Defendants designed and/or distributed technology and/or devices and/or induced individuals to use this technology to promote the use of infringed and copyrighted material. As a direct and proximate result of Defendants' inducement, individuals infringed Plaintiff's copyrighted works. These individuals reproduced, distributed and publicly disseminated Plaintiff's copyrighted works through Defendants' Web site.

117.   On information and belief, Defendants have encouraged the illegal uploading and downloading of Plaintiff's copyrighted works, thus inducing the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

118.   Defendants' actions constitute inducing copyright infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

119.   The infringement of Plaintiff's rights in and to each of the Plaintiff's copyrighted works constituted a separate and distinct infringement.

120.   The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

121.   As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's

**Page 19**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

122.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c ), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

123.   Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## FIFTH CLAIM FOR RELIEF

## FOR TRADEMARK INFRINGEMENT

### [15 U.S.C. §§ 1111 et. seq.]

### Against All Defendants

124.   Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

125.   By virtue of its trademark registrations, Plaintiff has the exclusive right to use of the trademarks, trade dress and service marks enumerated in this Complaint in the adult-oriented audio-visual markets, including Internet markets.

126.   Defendants' use of Plaintiff's registered trademarks and service marks is in a manner likely to cause consumer confusion, as alleged herein, constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

127.   Defendants' infringement is intentional and willful, has caused and will continue to cause damage to Plaintiff in an amount to be proven at trial, and is causing irreparable hard to Plaintiff for which there is no adequate remedy at law, thus Plaintiff are entitled to statutory and treble damages.

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

## SIXTH CLAIM FOR RELIEF

## CONTRIBUTORY TRADEMARK INFRINGEMENT

### [15 U.S.C. §§ 1111 et. seq.]

**Against All Defendants**

128. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

129. By virtue of its trademark registrations, Plaintiff has the exclusive right to use of the trademarks, trade dress and service marks enumerated in this Complaint in the adult-oriented audio-visual markets, including Internet markets.

130. Defendants' actions that encouraged use of Plaintiff's registered trademarks and service marks in manners likely to cause consumer confusion, as alleged herein, constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

131. Defendants' infringement is intentional and willful, has caused and will continue to cause damage to Plaintiff in an amount to be proven at trial, and is causing irreparable hard to Plaintiff for which there is no adequate remedy at law, thus Plaintiff are entitled to statutory and treble damages.

## SEVENTH CLAIM FOR RELIEF

## FOR FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

### [15 U.S.C. §§ 1125 et. seq.]

**Against All Defendants**

132. Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

133. Upon information and belief, Defendants' conduct is likely to cause confusion, mistake or deception as to Defendants' affiliations, connection, or

**Page 21**

ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

association with Plaintiff, or as to the origin, sponsorship or approval of their goods or commercial activities.

134.   Defendants' conduct as alleged herein, including but not necessarily limited to their use of Plaintiff's marks, constitutes false designation of origin pursuant to 15 U.S.C. § 1125(a).

135.   Plaintiff has been damaged by these acts in an amount to be proven at trial. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendants.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands a judgment,

*i.*

A.   That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

i.   Any and all reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any Web site, including but not limited to *Xvideos.com*, *Xvideosdaily.com*, and *Xvideostoday.net*;

ii.   Permitting any user to upload for reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works by Defendants on any Web site, including but not limited to *Xvideos.com*, *Xvideosdaily.com*, and *Xvideostoday.net*; and

iii.   Marketing or selling any product containing or utilizing Plaintiff's

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

1    intellectual property or business values;

2        B.      That Plaintiff be awarded actual damages in an amount to be determined

3    at trial for all infringing activities, including Plaintiff's damages and lost profits,

4    Defendants' profits, plus any costs incurred in preventing future confusion, mistake

5    or deception, all from the date of first infringement;

6        C.      That Plaintiff be awarded statutory damages as provided by the

7    Copyright Act of 1976, 17 U.S.C. § 504(c);

8        D.      That Defendants pay Plaintiff a sum sufficient to cover the cost of

9    corrective advertising necessary to alleviate any existing or lingering confusion

10   resulting from Defendants' unauthorized use of Plaintiff's trade dress and terms;

11       E.      That Defendants be ordered to account to Plaintiff for all profits, gains

12   and advantages which they have realized as a consequence of their unauthorized use

13   of Plaintiff's copyrighted works;

14       F.      That Plaintiff be awarded enhanced damages and attorney's fees;

15

16                                              *ii.*

17       G.      That finds that Defendants have engaged in, and continue to engage in,

18   unfair competition in violation of 15 U.S.C. § 1125(a);

19       H.      Finding that Defendants have and continue to infringe Plaintiff's

20   '3152759 trademark in violation of 15 U.S.C. § 1114;

21       I.      Finding that Defendants have and continue to infringe Plaintiff's

22   '4191754 trademark in violation of 15 U.S.C. § 1114;

23       J.      That pursuant to 15 U.S.C. § 1117, Defendants be held liable for all

24   damages suffered by Plaintiff resulting from the acts alleged herein;

25       K.      That Plaintiff be awarded damages in an amount to be determined at trial

26

27                                       **Page 23**

28          **ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

for all infringing activities, including Plaintiff's damages and lost profits, Defendants'
profits, plus any costs incurred in preventing future confusion, mistake or deception,
all from the date of first infringement;

L.     That pursuant to 15 U.S.C. § 1117 Defendants be ordered to account to
Plaintiff for all profits, gains and advantages which they have realized as a
consequence of their unauthorized use of Plaintiff's copyrighted works;

M.     That the Court declare this to be an exceptional case and award Plaintiff's
reasonable attorney fees pursuant to 15 U.S.C. § 1117

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

**Page 24**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**

*iii.*

N.   That Plaintiff be awarded pre-judgment and post-judgment interest;

O.   That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees;

P.   That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction; and

Q.   That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

Dated: July 1, 2015.                    Respectfully Submitted,

                                        CLYDE DeWITT
                                        LAW OFFICES OF CLYDE DeWITT, APC

                                        SPENCER D. FREEMAN
                                        FREEMAN LAW FIRM, INC.
                                        *(Subject to admission pro hac vice[2])*


                                        By:   */s/ Clyde DeWitt*
                                              Clyde DeWitt

                                        Counsel for Plaintiff

---

[2]     Pursuant to Local Rule IA 10-2(C), Mr. Freeman will comply with the requirements of LR IA 10-2 within forty-five days of the filing of this complaint, as required by Local Rule IA 10-2(e).

**Page 25**

**ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**