Michael T. Zeller (*Admitted Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
michaelzeller@quinnemanuel.com

Rachel Herrick Kassabian (*Admitted Pro Hac Vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
rachelkassabian@quinnemanuel.com

Pat Lundvall
Nevada State Bar No. 3761
MCDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
plundvall@mcdonaldcarano.com

*Attorneys for Defendant WGCZ, s.r.o.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HYDENTRA HLP INT. LIMITED, a foreign corporation, d/b/a METART, d/b/a SEXART, d/b/a The MetArt Network,<br><br>        Plaintiff,<br><br>v.<br><br>WGCZ, S.R.O., a foreign corporation, individually and d/b/a XVIDEOS.COM, XVIDEOSDAILY.COM, and XVIDEOSTODAY.NET; Does 1-10,<br><br>        Defendants. | Case No. 2:15-cv-01250-LDG-(NJK)<br><br>**DEFENDANT WGCZ, S.R.O.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>**ORAL ARGUMENT REQUESTED** |

1      Defendant WGCZ, s.r.o. ("WGCZ"), by and through its attorneys of record, the law firms

2  of Quinn Emanuel Urquhart & Sullivan, LLP and McDonald Carano Wilson LLP, hereby move

3  this court for dismissal of this action on each of the five counts brought in Plaintiff Hydentra HLP

4  Int. Limited's ("Hydentra") First Amended Complaint (the "FAC").

5      This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and

6  is based upon the attached Memorandum of Points and Authorities, the attached Request for

7  Judicial Notice and supporting exhibits thereto, the papers and pleadings on file herein, and any

8  oral argument that this Court may allow.

9

10  DATED:  July 26, 2016                    Respectfully submitted,

11                                           QUINN EMANUEL URQUHART & SULLIVAN, LLP

12

13                                           By ____/s/ Rachel Kassabian_____
                                                Michael Zeller
14                                              Rachel Kassabian

15                                           *Attorneys for Defendant WGCZ, s.r.o.*

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<strong>Page</strong>

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................1

    A. The Parties ....................................................................................................1

    B. The First Amended Complaint's Allegations.............................................3

    C. Facts Subject to Judicial Notice ................................................................5

III. LEGAL STANDARD .............................................................................................5

IV. ARGUMENT ..........................................................................................................7

    A. Hydentra's Copyright Claims Should Be Dismissed ................................7

        1. Hydentra Fails To Plead Any Actionable Territorial Infringement ..............7

        2. Hydentra Fails To Plead Facts Sufficient To State a Claim For Direct Infringement Because It Does Not Allege Any Volitional Conduct by WGCZ.......................................................................10

        3. Hydentra Fails To Plead Facts Sufficient To State A Claim For Contributory Copyright Infringement .........................................11

        4. Hydentra Fails To Plead Facts Sufficient To State A Claim For Vicarious Copyright Infringement ................................................12

    B. Hydentra Fails To Plead A Valid Claim for Trademark Infringement or False Designation Of Origin ..................................................................13

        1. Hydentra Fails To Plead Facts Sufficient to Show That WGCZ—As Opposed to its Users—Used Hydentra's Trademarks or Made a False Designation of Origin .......................................................13

        2. Hydentra's Conclusory Allegations of Consumer Confusion Are Not Plausible .......................................................................................15

V. CONCLUSION ....................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*,
    69 F.3d 381 (9th Cir. 1995)................................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................5, 6, 11, 12, 16

*CoStar Grp., Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004)...........................................................................................11

*Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578,
    2009 WL 6355911 (C.D. Cal. Dec. 21, 2009)
    *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013)...............................................8

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009)...........................................................................................11

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004).................................................................................10, 12

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ............................................................................10

*Fox Broadcasting Co., Inc. v. Dish Network L.L.C.*,
    747 F.3d 1060 (9th Cir. 2013)..................................................................................10, 11

*Free Kick Master LLC v. Apple Inc.*,
    140 F. Supp. 3d 975 (N.D. Cal. 2015) ....................................................................14, 15

*Greeson v. Imperial Irr. Dist.*,
    59 F.2d 529 (9th Cir. 1932)...............................................................................................6

*Hakkasan LV, LLC v. Adamczyk*,
    No. 2:14-cv-01717-GMN, 2015 WL 4997306 (D. Nev. Aug. 19, 2015)......................10

*Hydentra HLP Int. Ltd. v. Luchian, et al.*,
    No. 1:15-cv-22134-UU (S.D. Fla.) ...................................................................................2

*Hydentra HLP Int. Ltd. v. Maximum Apps Inc., et al.*,
    No. 1:15-cv-22463-MGC (S.D. Fla.) ................................................................................2

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    133 S. Ct. 1351 (2013)......................................................................................................6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2006)...........................................................................................6

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................................6

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
   149 F.3d 987 (9th Cir. 1998) ............................................................................7

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ............................................................................6

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) .........................................................................13

*New W. Corp. v. NYM Co. of California*,
   595 F.2d 1194 (9th Cir. 1979) .........................................................................13

*Omega S.A. v. Costco Wholesale Corp.*,
   541 F.3d 982 (9th Cir. 2008), *aff'd* 562 U.S. 40 (2010) ..................................6

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006) ........................................................14, 15

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ............................................................................6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..............................................................7, 8, 9, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098 AHM,
   2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ..................................................10

*Perfect 10 v. Google*,
   No. CV 04-9484 AHM (SHx),
   2010 WL 9479060 (C.D. Cal. July 30, 2010) .................................................12

*Perfect 10 v. Yandex*,
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) .....................................................7, 8, 9

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ............................................................................6

*Rosen v. eBay, Inc.*,
   No. CV 13-6801 MWF EX,
   2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ..................................................9

*Rundquist v. Vapiano SE*,
   798 F. Supp. 2d 102 (D.D.C. 2011) ..................................................................7

*S. Grouts & Mortars, Inc. v. 3M Co.*,
   No. 07-61388-CIV, 2008 WL 4346798
   (S.D. Fla. Sept. 17, 2008) *aff'd*, 575 F.3d 1235 (11th Cir. 2009) .....................8

*Shropshire v.Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ............................................................7

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
   919 F. Supp. 2d 1112 (D. Nev. 2013) ................................................................7, 13

*Subafilms Ltd. v. MGM-Pathe Comm'n Co.*,
   24 F.3d 1088 (9th Cir. 1994)..............................................................6, 7, 8, 9

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010)..............................................................15

*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*,
   813 F.2d 1553 (9th Cir. 1987).................................................................7

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013)................................................................9

## **Statutes**

15 U.S.C. §1114 .......................................................................................13

17 U.S.C. § 501(a)....................................................................................10

Fed. R. Civ. P. 12(b)(6) .......................................................................5, 16

Fed. R. Civ. P. 56 .......................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Hydentra, a foreign company that produces adult videos and operates adult websites, has brought copyright and trademark infringement claims against Defendant WGCZ s.r.o., a foreign company that operates an adult video streaming website, "xvideos.com."  Hydentra is a serial litigant, and this is one of nearly two dozen cases Hydentra has filed in the past year against dozens of (mostly foreign) defendants.  Xvideos.com is a free website, based in the Czech Republic, to which users can upload and share adult videos.  Hydentra asserts that WGCZ has committed copyright and trademark infringement by virtue of xvideos.com's hosting of user-uploaded unauthorized copies of Hydentra videos and user descriptions of those uploaded videos, and further claims that WGCZ has inadequately processed certain of Hydentra's DMCA notices.

This case should be dismissed because Hydentra has failed to state any actionable claim for relief.  The copyright claims fail because the FAC pleads no *territorial* infringement by WGCZ within the United States, and substantively lacks factual allegations sufficient to support the legal elements it recites.  The trademark infringement and false designation of origin claims also fall short because the FAC lacks any factual allegations that WGCZ actually "used" Hydentra's trademarks — which is necessary to support a claim for direct infringement — or any factual allegations supporting a plausible theory of consumer confusion.  They are the type of threadbare claims the Supreme Court of the United States deems inadequate to survive the pleadings stage.  Hydentra's facially invalid FAC should be dismissed in its entirety.

## II.   STATEMENT OF FACTS

### A.   The Parties

**Hydentra.**  Plaintiff Hydentra is a foreign corporation, organized and existing under the laws of Cyprus.  ECF No. 35 ¶ 10.  Although it claims to have its principal place of business in Los Angeles, California, *id*., Hydentra has not alleged the street address of this alleged principal place of business.  Judicially noticeable facts, however, confirm that the Los Angeles address Hydentra disclosed to the U.S. government in its copyright registrations is not Hydentra's business office at all, but rather, a mailbox rental store.  *Compare* Def. WGCZ, S.R.O.'s Request for

Judicial Notice ("RJN"), filed herewith, Ex. E (Hydentra copyright registrations listing business address in Encino, CA) *with* RJN Ex. F (public records showing Encino address belongs to "Encino Mail & More" store).  Despite WGCZ pointing this fact out in its prior Rule 12 motion, Hydentra failed to refute or otherwise address it in the FAC.  Hydentra also has not pleaded any ties with Nevada.

Hydentra operates a group of adult pay websites it refers to as the MetArt Network (ECF No. 35 ¶¶ 28, 30) and has filed more than twenty largely identical infringement complaints against various adult websites over the past year.[1]  Of those, only one has been litigated on the merits — and in that case, the court granted summary judgment in defendants' favor on every claim they moved on, including Hydentra's copyright claims.  *Hydentra HLP Int. Ltd. v. Luchian, et al.*, No. 1:15-cv-22134-UU (S.D. Fla.) (ECF No. 138 at 19-20) (citing "no record evidence" supporting Hydentra's allegations).   In another case, the foreign defendants who operate "sex.com" filed successful motions to dismiss for lack of personal jurisdiction.  *Hydentra HLP Int. Ltd. v. Maximum Apps Inc., et al.*, No. 1:15-cv-22463-MGC (S.D. Fla. May 24, 2016) (ECF No. 86); RJN Exs. H & I.  The other cases were voluntarily dismissed, dismissed for lack of service, are uncontested because they involve defendants who have defaulted, or remain pending.

---

[1]   *Hydentra HLP Int. Ltd. v. Kporno.com, et al.*, No. 2:15-cv-00238-SPL (D. Ariz.); *Hydentra HLP Int. Ltd. v. Tubenn.com, et al.*, No. 2:15-cv-00239-DLR (D. Ariz.); *Hydentra HLP Int. Ltd. v. Pornvideoxo.com, et al.*, No. 2:15-cv-00240-DJH (D. Ariz.); *Hydentra HLP Int. Ltd. v. Pornburst.xxx, et al.*, No. 2:15-cv-00443-DGC (D. Ariz.); *Hydentra v. HDPorn1080.com, et al.*, No. 2:15-cv-00442-PGR (D. Ariz.); *Hydentra HLP Int. Ltd. v. Sextvx.com, et al.*, No. 2:15-cv-00372-JLR (W.D. Wash.); *Hydentra HLP Int. Ltd. v. Seesexvideo.net, et al.*, No. 2:15-cv-00371-RSM (W.D. Wash.); *Hydentra HLP Int. Ltd. v. Pornowow.com, et al.*, No. 2:15-cv-00444-DLR (D. Ariz.); *Hydentra HLP Int. Ltd. v. Porn69.org, et al.*, No. 2:15-cv-00451-DGC (D. Ariz.); *Hydentra HLP Int. Ltd. v. Spankbang.com, et al.*, No. 2:15-cv-00199-RSM (W.D. Wash.); *Hydentra HLP Int. Ltd.  v. Motherless, Inc., et al.*, No. 2:15-cv-03834-TJH-AS (C.D. Cal.); *Hydentra HLP Int. Ltd. v. Jojobaa.net, et al.*, No. 2:15-cv-03904-DSF-RAO (C.D. Cal.); *Hydentra HLP Int. Ltd. v. Adultpornvideoxx.com, et al.*, No. 2:15-cv-03950-JAK-FFM (C.D. Cal.); *Hydentra HLP Int. Ltd. v. Luchian, et al.*, No. 1:15-cv-22134-UU (S.D. Fla.); *Hydentra HLP Int. Ltd. v. Maximum Apps Inc., et al.*, No. 1:15-cv-22463-MGC (S.D. Fla.); *Hydentra HLP Int. Ltd., et al. v. MindGeek USA Inc., et al.*, No. 1:15-cv-23230-KMW (S.D. Fla.); *Hydentra HLP Int. Ltd., et al. v. ERA Tech., Ltd., et al.*, No. 1:15-cv-24293-MGC (S.D. Fla.); *Hydentra HLP Int. Ltd., et al. v. Siracusa Mgmt. S.A., et al.*, No. 1:16-cv-20191-RNS (S.D. Fla.); *Hydentra HLP Int. Ltd. v. Stach, et al.*, No. 2:16-cv-00120-SMJ (E.D. Wash.); *Hydentra HLP Int. Ltd., et al. v. Sagan Ltd., et al.*, No. 2:16-cv-01494-DKD (D. Ariz.).

**WGCZ.**  Defendant WGCZ is a foreign corporation, organized and existing under the laws of the Czech Republic, with its principal place of business in Prague, Czech Republic.  *See* RJN Ex. A; *see also* ECF No. 35 ¶ 13 (Hydentra pleading Czech incorporation of WGCZ).  WGCZ operates the websites at issue in this case, "xvideos.com," "xvideosdaily.com," and "xvideostoday.net" (collectively, the "XVideos Sites").  ECF No. 35 ¶ 36.  Xvideos.com is a website where users can upload adult videos for free, and other users can view those videos for free.  *Id.* ¶¶ 39, 40.  Xvideos.com is specifically designed for adults, and contains explicit depictions of sexual activity its users have chosen to upload.  Xvideosdaily.com and xvideostoday.net used to have embedded video content that was hosted on xvideos.com and now are landing pages that re-direct users to xvideos.com.  *See* RJN Ex. M.

### B.     The First Amended Complaint's Allegations

Hydentra's First Amended Complaint purports to allege claims for direct, contributory, and vicarious copyright infringement, and for direct infringement of its trademarks and false designation of origin, against defendant WGCZ and ten Doe defendants based upon third party users' alleged uploads of unauthorized and infringing copies of 54 Hydentra videos onto xvideos.com's servers.[2]  *See* ECF No. 35.

Regarding its copyright claims, Hydentra acknowledges that xvideos.com is a host of user-uploaded content, alleging in relevant part that "[s]ome of the videos on WGCZ S.R.O.'s Web sites are provided by content producers while some of the videos are purported to be uploaded by third party internet users."  ECF No. 35 ¶ 40.  Specific to its own copyrights, Hydentra asserts that "[i]n or about January 2015 . . . Defendants' Web site Xvideos.com displayed 54 of Plaintiff's copyright registered works" despite having "no authority or license to display or distribute any portion of" those works.  ECF No. 35 ¶ 65.  Hydentra asserts that WGCZ committed direct copyright infringement because it "copied, reproduced, reformatted, and distributed Plaintiff's

---

[2]    After WGCZ filed its initial motion to dismiss, but before this Court could rule, Hydentra amended its complaint as of right, dropping its initial complaint's Count IV for inducement of copyright infringement and Count VI for contributory trademark infringement, as well as including additional allegations.  Nonetheless, significant pleading deficiencies remain.

copyrighted works by and through servers and/or hardware owned, operated and/or controlled by Defendants."  ECF No. 35 ¶ 97.  Hydentra also alleges that WGCZ uses regional caching services known as content delivery networks ("CDNs"), and contends (without factual basis for it) that "[e]ach of [its] videos was copied by Defendant WGCZ S.R.O. onto Defendant WGCZ S.R.O. United States CDN servers, and displayed to United States viewers . . . ."  ECF No. 35 ¶ 66.[3] Elsewhere, Hydentra acknowledges that these CDN facilities actually belong to a company called "Highwinds" – not WGCZ.  ECF No. 35 ¶¶ 50-51.  Hydentra next asserts that it sent xvideos.com DMCA take-down notices in late January 2015 (though it does not allege which claimed infringements were the subject of those notices) and implies that not all of those DMCA notices were fully processed to its satisfaction.  ECF No. 35 ¶ 67.

Regarding its contributory infringement claim, Hydentra asserts in the barest fashion that WGCZ "contributed to the infringing acts of those individuals" who directly infringed Hydentra's copyrighted works, without providing any factual explanation or support for that claim.  ECF No. 35 ¶ 116.  Likewise, its vicarious infringement claim merely recites legal elements – that WGCZ was "able to control or completely end the illegal and improper infringement, but failed to do so . . . [and] received directly [sic] financial gain and profit from those infringing activities."  ECF No. 35 ¶¶ 131, 133.  The FAC does not allege how WGCZ financially benefits directly from the alleged infringement of Hydentra's particular videos.

For its trademark claims, Hydentra contends that WGCZ directly infringes Hydentra's "MetArt" and "SexArt" trademarks by virtue of the fact that certain user-uploaded videos hosted by WGCZ include "MetArt" and "SexArt" meta tags (or, code embedded in the videos that help to identify the videos when running internet searches).  Importantly, Hydentra fails to provide any factual allegations as to whether it is the individual user/uploader, or WGCZ, who authors the

---

[3]  As explained by various technical dictionaries and encyclopedias, a content delivery network ("CDN") is an interconnected system of cache servers for delivering Web content.  CDNs use regional data centers to serve content from a particular website, dynamically calculate which data center is located nearest to the requesting end user and deliver locally cached content sourced from the originating server.  The result is less data packet loss, optimized bandwidth and faster performance which minimizes time-outs and latency, while improving overall user experience.

particular tags that describe each of these user-uploaded videos.  Instead, the FAC only vaguely asserts that WGCZ "caused Plaintiff's trademarks to be used" in the meta tags for certain videos that, as elsewhere alleged, were uploaded entirely by third party users.  ECF No. 35 ¶¶ 40, 71. These meta tags, the FAC contends, cause these videos to be returned in Google search results for these terms, and thereby deceptively "lure Web surfers" to the XVideos Sites.  ECF No. 35 ¶ 75. Some of these videos are actual Hydentra-produced videos, and some are not, according to the FAC.  ECF No. 35 ¶¶ 79-80.  Hydentra insists that these invisible meta tags are somehow "likely to cause confusion to the end users/consumers, especially initial interest confusion."  ECF No. 35 ¶ 77.  The FAC lacks any allegations that would render plausible the theory that users are indeed confused into thinking that every single search result returned by a search for a particular trademarked term (such as MetArt) originates from the company whose trademark they entered in a search query.  Nor do any allegations address the *Sleekcraft* likelihood of confusion factors.

### C.   Facts Subject to Judicial Notice

Judicially noticeable facts confirm that neither WGCZ nor the servers hosting the XVideos Sites are located in the United States.  Contrary to the FAC's allegation that WGCZ's principal office is in Nevada (ECF No. 35 ¶¶ 4, 13), government records confirm that WGCZ's office is located in Prague, Czech Republic.  *See* RJN Ex. A (Czech Ministry of Justice record listing WGCZ address in Prague, Czech Republic).  Reliable IP address lookup tools confirm that the XVideos Sites are all hosted on servers located in Amsterdam, Netherlands.  *See* RJN Exs. J-L. Judicially noticeable records also confirm that Hydentra's claimed office in Los Angeles (ECF No. 35 ¶ 10) is actually the address for a mailbox rental store, and that no company named "Hydentra" has ever been registered to do business with the California Secretary of State, nor the Los Angeles County clerk.  *See* RJN 4-5, Exs. B-F.

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). Although courts must take as true any factual allegations, this rule "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Twombly,* 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the pleader to relief.") (citing *Iqbal*, 556 U.S. at 678).

        To determine whether a complaint states a claim sufficient to withstand dismissal, a court may consider not only the contents of the complaint, but also any "materials incorporated into the complaint by reference, and matters of judicial notice." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 875-76 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court may also properly consider documents referred to in the pleadings, even if plaintiff does not include such document as part of its pleading. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2006); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir. 1998) (extending "incorporation by reference" rule to also include unincorporated materials necessarily relied upon in complaint). Judicially noticeable facts should be taken in the place of contradictory allegations in the pleading if such allegations are conclusory or unsupported. *See, e.g., Greeson v. Imperial Irr. Dist.*, 59 F.2d 529, 530 (9th Cir. 1932) ("When a pleader states matter as fact which is out of harmony with facts which the court judicially knows, the averments in the pleading are disregarded.").

1  **IV.    ARGUMENT**

2      **A.    Hydentra's Copyright Claims Should Be Dismissed**

3          **1.    Hydentra Fails To Plead Any Actionable Territorial Infringement**

4          It is well established that the Copyright Act has no extraterritorial application and

5  "presumptively does not apply to conduct that occurs abroad[.]"  *Omega S.A. v. Costco Wholesale*

6  *Corp.*, 541 F.3d 982, 988 (9th Cir. 2008), *aff'd* 562 U.S. 40 (2010), *abrogated on other grounds*

7  *by Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013).  As the Ninth Circuit explained

8  in the seminal *Subafilms* case:  "Because the copyright laws do not apply extraterritorially, each of

9  the rights conferred under the five section 106 categories must be read as extending 'no farther

10  than the [United States'] borders.' . . . [W]e reaffirm that the United States copyright laws do not

11  reach acts of infringement that take place entirely abroad."  *Subafilms Ltd. v. MGM-Pathe*

12  *Comm'n Co.*, 24 F.3d 1088, 1094, 1098 (9th Cir. 1994).  To plead an actionable claim, a plaintiff

13  must allege an act of direct infringement that occurred within the United States.  *See, e.g., Los*

14  *Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir. 1998) ("For

15  the Copyright Act to apply, 'at least one alleged infringement must be completed entirely within

16  the United States.'") (quoting *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d

17  381, 387 (9th Cir. 1995)).[4]

18  _____

19      [4]   In copyright cases, district courts have generally treated extraterritoriality as a necessary
   element of an infringement claim subject to a Rule 12(b)(6) challenge.  *See Perfect 10 v. Yandex*,
20  962 F. Supp. 2d 1146, 1154 n.1 (N.D. Cal. 2013); *see also Shropshire v.Canning*, 809 F. Supp. 2d
   1139, 1144 (N.D. Cal. 2011) ("In the pending action, therefore, the Court finds that *Arbaugh* [*v.*
21  *Y&H Corp.*, 546 U.S. 500, 516 (2006)] requires extraterritoriality to be decided as an element of a
   claim for copyright infringement rather than an issue of subject matter jurisdiction.").  Some
22  courts, however, find that extraterritoriality is a question of subject matter jurisdiction, rather than
   an element of a plaintiff's claim.  *See, e.g., Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 123
23  (D.D.C. 2011) ("U.S. courts do not have subject matter jurisdiction over claims arising from []
   foreign activity."); *see also Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1117 (D.
24  Nev. 2013) ("There is currently no clear consensus among the courts regarding whether the issue
   of the extraterritorial reach of the Copyright Act should be treated as an issue of subject matter
25  jurisdiction, or should instead be treated as an element of a claim").
26

27      This distinction is immaterial here, because Hydentra's claims are subject to dismissal
   under either analysis.  Should the Court elect to view this question as a matter of its subject matter
28  jurisdiction, rather than as a pleading failure, WGCZ alternatively moves to dismiss these claims

In the Internet context, the "server test" dictates that a direct infringement "takes place" at the location of the computer responsible for hosting the allegedly infringing content.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159-60, 1162 (9th Cir. 2007) (establishing "server test").  Thus, where an allegedly infringing website is hosted on a server located outside the United States, no claim for direct infringement under the Copyright Act lies.  *Perfect 10 v. Yandex*, 962 F. Supp. 2d 1146, 1153-54 (N.D. Cal. 2013) ("Yandex's hosting of full-sized Perfect 10 images on servers in Russia does not constitute direct copyright infringement in the United States.").  Further, failure to plead an actionable, territorial direct infringement necessarily defeats any secondary infringement claim as well.  "It is definitional that, for a defendant to be held contributorily . . . liable, a direct infringement must have occurred."  *Subafilms*, 24 F.3d at 1092 (citation omitted).

Here, the FAC alleges that WGCZ has committed copyright infringement by hosting unauthorized, user-uploaded copies of Hydentra's videos on three specific websites — xvideos.com, xvideosdaily.com, "and/or" xvideostoday.net.  ECF No. 35 ¶¶ 36, 97-99.  However, judicially noticeable facts confirm that these three websites are hosted on servers located abroad[5] and thus cannot give rise to actionable infringement under the Ninth Circuit's "server test."  *Amazon*, 508 F.3d at 1159-60.  This extraterritoriality defect is fatal.  *See Yandex*, 962 F. Supp. 2d at 1153 (dismissing direct infringement claim because "foreign-hosted images are extraterritorial and not actionable under the [Copyright] Act").

---

for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Hydentra's burden in opposing such a motion is the same as for a motion for summary judgment under Rule 56.  *See, e.g., Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987).

[5]  Basic website registration and IP address lookup tools confirm the servers for the XVideos Sites are located outside the United States — specifically, in Amsterdam.  *See* RJN Exs. J-L.  Courts routinely take judicial notice of such internet lookup data.  *See, e.g., Columbia Pictures Indus., Inc. v. Fung*, No. CV 06-5578, 2009 WL 6355911, at *9 n.16 (C.D. Cal. Dec. 21, 2009) *aff'd in part as modified*, 710 F.3d 1020 (9th Cir. 2013) (noting that neither side disputed that using internet protocol address lookup tools to determine physical location of a computer is highly accurate); *S. Grouts & Mortars, Inc. v. 3M Co.*, No. 07-61388-CIV, 2008 WL 4346798, at *16 (S.D. Fla. Sept. 17, 2008) *aff'd*, 575 F.3d 1235 (11th Cir. 2009) (taking judicial notice of entities to whom certain domain names were registered).

In hopes of creating a territorial hook for its direct infringement claim, Hydentra asserts that WGCZ uses CDN facilities in the United States (among other places).  ECF No. 35 ¶¶ 50, 66. This does not save Hydentra's copyright claims from dismissal.  First, as a factual matter, Hydentra's conclusory allegation that WGCZ itself "copies" videos to servers owned and controlled by third party CDN providers is precisely the type of bald allegation, devoid of any factual content, that courts routinely reject under *Iqbal*.  Tellingly, Hydentra has not pleaded any such facts because it cannot — such allegations would be untrue.

Second, as a legal matter, these automated and temporary cache copies created by CDN facilities are not an actionable infringement in the first place.  *See Amazon*, 508 F.3d at 1169-70. As the Ninth Circuit has explained in the context of discussing local caching of copies of allegedly infringing images by the web browsers of individual users' computers:

> a cache copies no more than is necessary to assist the user in Internet use. It is designed to enhance an individual's computer use, not to supersede the copyright holders' exploitation of their works.  Such automatic background copying has no more than a minimal effect on [the copyright holder's] rights, but a considerable public benefit. . . .  [C]ache copying constitutes a fair use . . .

*Id*.  And, at least one district already has applied this same reasoning to the temporary caching performed by CDNs specifically:

> The widespread use of CDNs means that most content is passed from a service provider to one or more third parties before reaching an end user. It is this copying and distribution of copyrighted material for which Rosen claims eBay is liable. However, such usage is minimal and is a crucial part of maintaining not only internet commerce, but the efficient operation of the internet generally. It also causes only minor and wholly incidental copying and distribution of images. The Ninth Circuit held that Google's use of cached copies of pages was fair use because it was an automatic process carried out to improve a user's internet experience, and not to exploit the copyrighted works. *Amazon.com*, 508 F.3d at 1169–77. As in Amazon.com, eBay's use of CDNs is designed to "enhance [a user's] use, not to supersede the copyright holders' exploitation of their works." *Id.* at 1169. eBay's use of CDNs is highly analogous and is fair use.

*Rosen v. eBay, Inc.*, No. CV 13-6801 MWF EX, 2015 WL 1600081, at *21 (C.D. Cal. Jan. 16, 2015).  The CDN allegations thus do not save Hydentra's direct infringement claim from dismissal on extraterritoriality grounds.  *See Yandex*, 962 F. Supp. 2d at 1153.

Hydentra's secondary infringement claims also fail for lack of territorial infringement, because secondary liability cannot exist absent an act of *territorial* direct infringement. *See, e.g.*,

*Subfilms*, 24 F.3d at 1092 n.7 ("[U]nder the Copyright Act . . . liability for contributory infringement cannot be based on an infringement that takes place overseas"); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) (it is "well-established" that secondary liability requires a direct infringement).  Because Hydentra fails to allege a territorial direct infringement, its secondary infringement claims cannot stand.  *Yandex*, 962 F. Supp. 2d at 1157 (a plaintiff must first properly plead direct infringement "because secondary liability otherwise cannot exist").  Thus, all three copyright claims, for direct, contributory, and vicarious infringement, must be dismissed for this reason alone.

> ## 2.   Hydentra Fails To Plead Facts Sufficient To State a Claim For Direct Infringement Because It Does Not Allege Any Volitional Conduct by WGCZ

In addition to the fatal extraterritoriality defect, Plaintiff's failure to plead a lack of volitional conduct by WGCZ provides yet another basis for dismissing its direct copyright infringement claim.  A proper pleading requires: (1) ownership of a valid copyright in the allegedly infringing materials; and (2) that defendant has engaged in conduct constituting a violation of at least one exclusive right granted under 17 U.S.C. § 106.  17 U.S.C. § 501(a); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Hakkasan LV, LLC v. Adamczyk*, No. 2:14-cv-01717-GMN, 2015 WL 4997306, at *7 (D. Nev. Aug. 19, 2015); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006).  A plaintiff in the Ninth Circuit must also plead volitional conduct — *i.e.* ,  that the defendant itself took some affirmative step to effectuate the infringement.  *Fox Broadcasting Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013) ("[i]nfringement of the reproduction right requires copying *by* the defendant") (internal quotations omitted, emphasis in original); *Field*, 412 F. Supp. 2d at 1115 ("A plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement.") (citation omitted); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM, 2013 WL 2109963, at *7 (C.D. Cal. Mar. 8, 2013) ("Defendants merely engaged in the act of 'designing or implementing a system that automatically and uniformly creates temporary copies of all data sent through it,' whether that data contains infringing content or not.  Such conduct does not constitute any volitional act.") (internal citations omitted).

Case No. 2:15-cv-01250-LDG-(NJK)

DEFENDANT WGCZ, S.R.O.'S RULE 12(B)(6) MOTION TO DISMISS

Plaintiff has failed to properly allege volitional conduct here.  Hydentra claims that WGCZ has directly infringed by copying, reproducing, reformatting and distributing Plaintiff's copyrighted works "by and through servers and/or hardware owned, operated and/or controlled by Defendants."  ECF No. 35 ¶ 97.  But of course, it is not enough that infringement by third party users allegedly occurred on a defendant's servers.  Merely creating a system capable of hosting content (be it infringing or non-infringing) does not give rise to a claim for direct infringement against the host, because the host has not volitionally created the infringing copy.  *See CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) ("the automatic copying, storage, and transmission of copyrighted materials, when instigated by others," does not constitute a volitional act bringing infringement liability); *Fox Broadcasting Co.,* 747 F.3d at 1067.[6]  Hydentra has failed to plead a colorable claim for direct infringement as a matter of law.  *CoStar*, 373 F.3d at 555.

### 3.    Hydentra Fails To Plead Facts Sufficient To State A Claim For Contributory Copyright Infringement

A plaintiff asserting a contributory infringement claim must plead facts demonstrating that the defendant had knowledge of the underlying direct infringement, and materially contributed to it.  *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009).  Plaintiff has

---

[6]   In an attempt to salvage its direct infringement claim, Hydentra makes a conclusory allegation "on information and belief" that WGCZ "actively uploaded [unspecified] pirated copyrighted files and/or embedded code . . . ."  ECF No. 35 ¶ 104.  This is irrelevant to Hydentra's direct infringement claim, of course, because nowhere is it alleged that these were *Hydentra's* copyrighted files.  Moreover, Hydentra fails to plead any factual matter supporting this conclusory statement.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  In fact, Hydentra elsewhere alleges that content producers and users — as opposed to WGCZ itself — uploaded the videos on xvideos.com.  ECF No. 35 ¶ 40.

Hydentra's conclusory and unsupported allegation that WGCZ copies videos to the Highwinds CDN (ECF No. 35 ¶¶ 50, 66) does not salvage its direct infringement claim either.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Moreover, the mere temporary caching of content to facilitate users' internet experience is not even an actionable instance of copying, and thus cannot sustain a direct infringement claim.  *See* Section IV.A.1, *supra*.

failed to plead any facts supporting such a claim, instead merely reciting the bare elements themselves.  *See* ECF No. 35 ¶ 116 (asserting in the barest fashion that WGCZ "contributed to the infringing acts of those individuals" who directly infringed Hydentra's copyrighted works); ¶ 120 (asserting that "Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to" the direct infringement of its works).  This claim fails under *Twombly* and *Iqbal*.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### 4.    Hydentra Fails To Plead Facts Sufficient To State A Claim For Vicarious Copyright Infringement

To properly plead a vicarious copyright infringement claim, a plaintiff must allege facts establishing that the defendant has a right and ability to supervise or control the direct infringer, and that the defendant derives a direct financial benefit from the direct infringement.  *Amazon*, 508 F.3d at 1173.  The necessary level of control requires that the defendant have "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Id*.  A "direct" financial benefit means, for instance, that a defendant draws or gains subscribers specifically due to the availability of infringing material.  *Ellison*, 357 F.3d at 1079.

Hydentra fails to satisfy this standard.  First, it has made only "[t]hreadbare recitals of the elements" (ECF No. 35 ¶¶ 131, 133), which does not pass muster under *Iqbal*.  Second, Hydentra's attempt to plead facts supporting the direct financial benefit prong by alleging that WGCZ's websites "contain significant infringements" that "raise[s] the popularity of the Web sites and, therefore, the Internet traffic to the sites . . . [which] results in increased revenues generated from the sales of advertising space" (ECF No. 35 ¶ 44) also falls short.  Such conclusory allegations, which are both devoid of factual support and divorced from the specific alleged infringements of the Hydentra works at issue, cannot sustain a vicarious liability claim.  *See Ellison*, 357 F.3d at 1079 (rejecting vicarious liability claim because plaintiff failed to demonstrate that defendant "attracted or retained subscriptions because of the infringement or lost subscriptions because of [defendant's] eventual obstruction of the infringement").  And finally, this theory — that advertising on a website that displays (both infringing and non-infringing) copyrighted works

is a "direct" financial benefit — has been rejected before.  *See Perfect 10 v. Google*, No.  CV 04–9484 AHM (SHx), 2010 WL 9479060, at *9 (C.D. Cal. July 30, 2010) (rejecting argument that revenue generated by advertisements displayed alongside allegedly infringing images qualified as a "direct financial benefit" for purposes of vicarious liability).

**B.**   **Hydentra Fails To Plead A Valid Claim for Trademark Infringement or False Designation Of Origin**

Hydentra's purported claims for trademark and false designation of origin also fail on the pleadings.  To state a claim for trademark infringement, a plaintiff must plead that the defendant owns a valid trademark mark and that "the defendant used the mark in interstate commerce in connection with the 'sale, offering for sale, distribution, or advertising of any goods or services,' and that such use is likely to cause consumer confusion."  *Stevo Design*, 919 F. Supp. 2d at 1120 (quoting 15 U.S.C. § 1114 and citing *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144-45 (9th Cir. 2011)). The elements for pleading a violation of 15 U.S.C. §1125(a) under a false designation of origin theory are essentially the same as for trademark infringement under 15 U.S.C. §1114: "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."  *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979); *accord Stevo Design*, 919 F. Supp. 2d at 1120-21 ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical: is there a 'likelihood of confusion?'") (quoting *New W. Corp.*, 595 F.2d at 1201). Accordingly, all of the arguments made in this section apply equally to Hydentra's Fourth and Fifth Claims.

**1.**   **Hydentra Fails To Plead Facts Sufficient to Show That WGCZ—As Opposed to its Users—Used Hydentra's Trademarks or Made a False Designation of Origin**

Hydentra failed to plead facts sufficient to support a claim that WGCZ has itself directly infringed the Asserted Marks.  Hydentra vaguely alleges that WGCZ "has caused" the Asserted Marks "to be used in the meta tags and/or meta descriptions" on the XVideos Sites and that it

Case No. 2:15-cv-01250-LDG-(NJK)
DEFENDANT WGCZ, S.R.O.'S RULE 12(B)(6) MOTION TO DISMISS

thereby "linked Hydentra's trademarks SexArt and MetArt to videos that are not produced [by], sponsored [by], or related to Hydentra." ECF No. 35 ¶¶ 71, 80. But these videos are uploaded by third-parties, not WGCZ. ECF No. 35 ¶ 40. Tellingly, Hydentra does not allege that WGCZ itself authored the meta tag content, selected which words to use as meta tags, or otherwise made the decision to use Hydentra's asserted trademarks as meta tags or otherwise "link" unrelated videos to the Hydentra marks. Hydentra thus fails to put any factual meat on its bare-bones conclusion that WGCZ "has caused" the allegedly infringing uses.[7] This is inadequate to state a claim. *E.g., Iqbal,* 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). The actions of third-party uploaders, i.e., WGCZ's *users,* in how they chose to name and describe the videos they upload cannot constitute a "use in commerce" by *WGCZ.*

Direct trademark violations can only be found if the defendant "actively participate[d] as a moving force in the decisions to engage in the infringing acts or otherwise cause[d] the infringement as a whole to occur." *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 503 (E.D. Pa. 2006) (citations omitted). Accordingly, the *Parker* court dismissed a trademark infringement claim against Google because the plaintiff alleged that the defendant participated in the *display* of the allegedly infringing content, but did "not contend that Google in any way participated in the *creation* of the . . . content." *Id.* (emphasis added). As the court held, that "is an insufficient basis upon which to maintain a claim for trademark infringement." *Id.* (citation omitted). Likewise, the court in *Free Kick Master LLC v. Apple Inc.* dismissed trademark claims "seeking to hold [platform owners] Amazon/Google liable for alleged infringements by third-party app developers," where the plaintiff did not allege that "either . . . [Amazon or Google] had any role

---

[7]  Nor could Hydentra allege in good faith that WGCZ authored the content of the meta tags. As Hydentra acknowledges, the videos on WGCZ's site are uploaded by third parties. ECF No. 35 ¶ 40. As is apparent from the video upload page on xvideos.com, the users insert the words they wish to use as tags for the videos they upload. RJN Ex. N. Hydentra does not allege that WGCZ either personally determines which tags to apply, or randomly applies tags to videos, because WGCZ of course could have no factual basis for such an allegation.

whatsoever in the creation of the apps at issue, the choice of name for those apps, or any other action that would place either defendant in the role of speaker or author of the accused products." *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 979-81 (N.D. Cal. 2015).  Thus, although the complaint "referr[ed] to 'defendants' use of the Free Kick Master mark,'" the court dismissed the direct infringement claim because the complaint "allege[d] no *facts* showing that Amazon or Google *in fact* 'used' the mark."  *Id.* at 982 (emphasis added).

As in those cases, the claims here for direct trademark violations fail at the pleading stage because Hydentra does not allege that WGCZ authored the meta tag content or otherwise "actively participate[d] as a moving force in the decisions to engage in the infringing acts."  *Parker*, 422 F. Supp. 2d at 503.

### 2.   Hydentra's Conclusory Allegations of Consumer Confusion Are Not Plausible

Even if Hydentra had alleged that WGCZ had authored the content of the meta tags or otherwise consciously made a decision to associate videos with Hydentra that it are unrelated to it, Hydentra's trademark and false origin claims nonetheless fail.  Hydentra's allegations do not state a plausible claim that consumer confusion is likely to result from the allegedly infringing uses.  As Hydentra admits, meta tags "do not affect the appearance of a Web site and are not visible when you look at a Web page."  ECF No. 35 ¶¶ 72-73.  In other words, despite the fact that users do not see the meta tag, Hydentra nevertheless alleges they will be confused by it.  ECF No. 35 ¶¶ 77, 81, 83; *see also* ¶¶ 71-76, 78-80, 82.

Hydentra's theory of liability—that reasonable consumers will believe that all search results originate from the company whose trademark they entered in a search query—is routinely rejected by courts as facially implausible.  As the Ninth Circuit has explained:

> [R]easonable, prudent and experienced internet consumers are accustomed to . . . exploration by trial and error. [citation omitted]  They skip from site to site, . . . fully expect[ing] to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary.

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010).  "This is sensible agnosticism, ***not consumer confusion***."  *Id.* (emphasis added).  Here, the FAC identifies no facts

1  that would make its claim of search result confusion more plausible than those the Ninth Circuit

2  rejected.[8]

3      In sum, the FAC does not allege "factual content that allows the court to draw the

4  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at

5  678 (citing *Twombly*, 550 U.S. at 556).  Because Hydentra's theory of liability is therefore not

6  "plausible on its face," *Iqbal,* 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 570), its claims for

7  trademark infringement and false designation of origin should be dismissed.

8  **V.    CONCLUSION**

9      For the foregoing reasons, WGCZ respectfully requests that the Court grant its Motion to

10  Dismiss Hydentra's First Amended Complaint for Failure to State a Claim pursuant to Federal

11  Rule of Civil Procedure 12(b)(6).

12  DATED:  July 26, 2016                              Respectfully submitted,

13                                                         QUINN EMANUEL URQUHART & SULLIVAN LLP

14                                                    By     */s/ Rachel Kassabian*

15                                                         Michael Zeller
                                                          Rachel Kassabian

16

17                                                         *Attorneys for Defendant WGCZ, s.r.o.*

18

19

20

21

22

23

24

25

---

26      [8]  Indeed, given the generic and/or descriptive nature of its alleged "SexArt" trademark,
    Hydentra's claim is even more implausible because users may search for "sexart" without even

27  associating the search with Hydentra or expecting to see search results limited to Hydentra's

28  videos.